*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID KILKEARY, | : | |
| Petitioner, | : | Civil Action No. 12-2781 (PGS) |
| v. | : | OPINION |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**SHERIDAN**, District Judge:

Presently before the Court is the motion of David Kilkeary ("Petitioner" or "Mr. Kilkeary") brought pursuant to 28 U.S.C. § 2255. (ECF No. 1, 7.) Respondent, United States of America ("Respondent"), filed an Answer (ECF No. 9) and Petitioner filed a Reply (ECF No. 10). For the following reasons, the Court will deny the Motion, and will issue a certificate of appealability.

**I. BACKGROUND**

On May 18, 2009, a grand jury in the District of New Jersey returned a three-count indictment, charging Petitioner with: (1) willfully threatening to cause harm to persons and property by conveying false information that bombs he intended to detonate were genuine explosives, in violation of 18 U.S.C. §§ 844(e); (2) kidnapping through an instrumentality of interstate commerce, in violation of 18 U.S.C. §§ 1201(a); and (3) extortion, in violation of 18 U.S.C. §§ 1951(a). *United States v. Kilkeary*, 410 F. App'x 554, 557 (3d Cir. 2011). On August 19, 2009, Petitioner entered a guilty plea to all counts. *Id.* The Court entered judgment on March 12, 2010, imposing a sentence of 300 months of incarceration and five years of supervised release. *Id.* Petitioner filed an appeal and on February 1, 2011, the Third Circuit affirmed the sentence

imposed. *Id.*

When denying Petitioner's appeal, the Third Circuit summarized the facts of Petitioner's crimes as follows:

> On November 13, 2007, Kilkeary implemented a complicated scheme to extort $3 million from the Showboat Hotel & Casino (the "Showboat") in Atlantic City, New Jersey. Kilkeary decided to take hostages on a casino shuttle bus by threatening them with a fake handgun and a hoax bomb, and to plant a fake bomb in the hotel, with the design to trade the hostages and defuse the bombs for cash. After receiving the cash, he planned to escape by diverting the police by throwing a Molotov cocktail from the shuttle bus and driving the shuttle bus into an inlet. There, he would escape by using a self-propelled scuba scooter to transport himself across the inlet to a nearby beach in Brigantine, New Jersey, retrieve a towel and dry clothing, and complete his escape by taxi to his waiting truck.
>
> In pursuit of his plan, Kilkeary rented a scuba tank, regulator, suit, and mask, and purchased a scuba motor. To avoid suspicion, he simultaneously signed up for scuba classes. He also purchased a pellet gun, wig and ski mask, and constructed a hoax bomb, suicide bomb vest, and detonation device, as well as a Molotov cocktail. Kilkeary lied to his wife and family, telling them that he was meeting a potential buyer of his construction business for a sale that would net $150,000.
>
> On November 13, 2007, Kilkeary first stopped at his escape destination on the beach in Brigantine, where he secreted a garbage bag containing towels, a change of clothes, and a $20 bill for transportation back to his truck. At about 8:30 p.m., he departed for the casino. Along the way, however, he stopped his truck for about ten minutes and contemplated the gravity of what he was about to do. Although he knew that what he was about to do was "wrong," he determined to press on.
>
> Kilkeary arrived at the Showboat at approximately 9:45 p.m. and placed the hoax bomb in a second-floor bathroom next to the casino's poker room. He proceeded to the shuttle bus area. Having determined that the first bus was too crowded, he again stopped for several minutes awaiting the arrival of the second shuttle, and considered whether to proceed. Again, he resolved to act.

2

> When Kilkeary, now disguised, attempted to board the bus, Lee Speller, the bus driver, informed him that he could not do so with large bags. Kilkeary then produced the fake gun and essentially stated, "You are going to drive this bus—I got a bomb." (Presentence Report ("PSR") ¶ 18.) Speller refused the command. In an ensuing physical struggle, Kilkeary and Speller fell out of the bus onto the street. Kilkeary re-entered the bus; the driver, who had sprained both ankles and a wrist, fled to safety.
>
> During the melee, passenger William Haley had exited the bus to assist the driver. Finding this fruitless, he offered to re-enter the bus if Kilkeary would release Haley's wife, Christine. When Kilkeary refused, Haley boarded the bus. Kilkeary threatened his four hostages with the gun, bomb, and detonator, pointing the gun at them and telling them that he would "kill" them and "blow everyone up." (*Id.* ¶ 19–21; A. 356–57.) Kilkeary attempted to drive the bus, but was unsuccessful because he did not know how to release the air brake. Ten minutes later, after holding the gun to her head, Kilkeary released Christine Haley with instructions to inform Showboat security that he had hostages on the bus.
>
> A search of the hotel revealed the planted fake bomb. As a result of this discovery, the casino evacuated some 1500 to 2000 guests. Kilkeary then attempted to relocate himself and his hostages to a second bus. In the process, William Haley offered to carry Kilkeary's bags if the two remaining passengers were released. Kilkeary agreed, and the two passengers were released. After assisting Kilkeary in transferring the bags to a second bus, Haley managed to escape.
>
> Kilkeary, now alone, attempted to drive away in the second bus, but there were no keys. Law enforcement robotically delivered a cell phone to him, through which he negotiated for five and a half hours, pretending to be a former General from the Republic of Georgia and speaking with a Russian accent. After an aborted SWAT raid, Kilkeary surrendered to law enforcement at approximately 4:18 a.m.

*Id.* at 555-556.

After the Third Circuit denied his appeal, Petitioner thereafter filed the instant § 2255 motion. (ECF No. 1, 7.) Petitioner raises three grounds for relief: (1) ineffective assistance of

counsel; (2) failure for the Court to recuse itself; and (3) prosecutorial misconduct. (*Id.*)

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).

The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41 42 (3d Cir. 1992). Where the record, as supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587

4

F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing only necessary where the petitioner's claims are not conclusively resolved by the record). For the reasons explained below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law. An evidentiary hearing is thus not required.

**B. Analysis**

**1. Recusal (Ground Two)**

In Ground Two of his Petition, Petitioner argues that it was a violation of his due process rights when the Court failed to *sua sponte* recuse itself from Petitioner's criminal proceedings. (Pet'r's Br. 13, ECF No. 7.)

A determination regarding recusal is within the sound discretion of the trial court judge. *United States v. Wilensky*, 757 F.2d 594, 599–600 (3d Cir. 1985). The circumstances in which a judge should recuse himself are set forth in two federal statutes. Section 455(a) of Title 28 of the United States Code provides, in pertinent part, that: "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 193 (3d Cir. 2007) (*In re Kensington*, 353 F.3d 211, 220 (3d Cir. 2003)).

Motions for recusal are also governed by 28 U.S.C. § 144. Recusal must occur under 28 U.S.C. § 144 "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. A "substantial

burden is imposed on the party filing an affidavit of prejudice to demonstrate that the judge is not impartial." *Frolow v. Wilson Sporting Goods Co.*, Civ. No. 05–04813, 2011 WL 1337513, at *2 (D.N.J. Apr.7, 2011) (citation omitted). "In satisfying this burden, the movant must make a three-fold showing: (1) the facts must be material and stated with particularity; (2) the facts must be such that, if true they would convince a reasonable man that a bias exists; (3) the facts must show the bias is personal, as opposed to judicial, in nature." *Id.* (citing *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973)).

Here, there is absolutely no basis to conclude that the impartiality of the Court could be questioned. Nor is there any basis to conclude that the Court had a personal bias or prejudice against Petitioner or in favor of any adverse party. Petitioner's reasons for questioning the Court's impartiality are without merit. Prior to joining the bench, the Court represented the Atlantic City Casino Association and was a named partner at a law firm whose list of clients included casinos and the Casino Association of New Jersey. However, none of those facts even remotely suggest that the Court could not be impartial or somehow held a bias against Petitioner. Any relationship the Court had with the casino industry had long since terminated by the time the Court presided over Petitioner's case, as had the Court's partnership with the law firm. More importantly, neither Showboat nor the Casino Association was a party to this criminal matter. In short, there is nothing in the record to suggest that Petitioner has any basis for his claim that the Court had an obligation to recuse itself. Petitioner's claim for § 2255 relief on this ground is denied.

**2. Ineffective Assistance of Counsel (Ground One)**

The Sixth Amendment[1] guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In order to succeed on a claim of ineffective counsel, Petitioner must satisfy the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Petitioner must show that counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id.* at 687–688. Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...." *Harrington v. Richter*, — – U.S. ——, ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional

---

[1] The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI.

norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674) (internal citations omitted). There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693.

**a. Failure to Request Recusal**

In his first ground for relief, Petitioner argues that trial counsel was ineffective for failing to request that the Court recuse itself based on a previous representation while in private practice. Specifically, Petitioner alleges that since the Court had previously served as Vice President and General Counsel for the Atlantic City Casino Association and was a named partner in a law firm which represented casinos and the Casino Association of New Jersey, trial counsel should have filed a motion for recusal. (Pet'r's Br. 7, ECF No. 7.)

Petitioner cannot meet either prong of *Strickland*. As stated above, the basis for Petitioner's assertion that the Court should have recused itself is without merit. He states that there is a "reasonable probability that Peter G. Sheridan consulted the casinos, or the Casino Association on how to eviscerate criminal behavior in and around the casinos." (Pet'r's Mem. 8.) However, he provides absolutely no support for this allegation. The Court's association with the

8

casino industry terminated well before Petitioner's case was pending and there is no indication or suggestion that the Court was influenced in any way simply because Petitioner's crime occurred on the grounds of a casino. Since counsel cannot be found ineffective for failing to raise a meritless argument, Petitioner cannot meet the first prong of *Strickland*. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Moreover, Petitioner cannot establish any prejudice which occurred as a result of counsel's failure to raise the recusal argument because as discussed above, such any such motion would have been denied.

**b. Failure to Learn the Law**

In his second ground for relief on the basis of ineffective assistance of counsel, Petitioner argues that trial counsel "failed to learn the elements of the offense charged in Count One and effectively relieved the government of it's [sic] burden of proof by conceding that there are only two elements necessary to sustain a violation of 18 U.S.C. § 844(e)." (Pet'r's Mem. 9.)

In Count One of the indictment, Petitioner was charged with violation of 18 U.S.C. § 844(e), which states:

> [w]hoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

During the plea hearing, the following exchange occurred regarding Count One:

> THE COURT: Count 1 charges that in violation of Title 18, United States Code, Section 844(e), there are two theories to the statute.

> Either one of which is adequate to sustain a conviction. In the exchange, the government has evidence beyond a reasonable doubt regarding both theories. Of the two theories, they return as two elements. The first theory is that: One, the defendant knowingly and willfully; Two, made a threat by means of fire or explosives. The second theory is that: The defendant knowingly and maliciously conveyed false information. Those are the two theories, your Honor.
>
> THE COURT: And so the crime, it has two elements and under the two theories two separate elements. Is that correct?
>
> [GOVERNMENT]: Yes, your Honor.
>
> THE COURT: Mr. Engle, do you agree those are the essential elements for Count 1?
>
> [DEFENSE COUNSEL]: I do.
>
> THE COURT: And, Mr. Kilkeary, you understand the government would be required to prove each of those elements beyond a reasonable doubt in order to convict you?
>
> THE DEFENDANT: Yes, your Honor.

(Resp't's Answer, Ex. B, Plea Hr'g Tr. 21:3-24.)

Here, Petitioner argues that § 844(e) does not have two elements, but actually has five elements: "(1) the defendant acted willfully; (2) by mail, telephone, telegraph, or other instrument of commerce; and (3) made a threat or maliciously conveyed false information, knowing the information to be false, about an attempt; (4) to kill, injure, or intimidate an individual or to damage or destroy a building, vehicle, or other real or personal property; (5) by means of fire or explosive." *United States v. Barry*, No. 10-776, 2011 WL 6019265, at *3 (E.D. Pa. Dec. 5, 2011) (citing *United States v. Spruill*, 118 F.3d 221, 224–25 (4th Cir. 1997)). As a result, Petitioner alleges that he received ineffective assistance of counsel when his trial attorney agreed with the Government that there are only two elements of the statute.

10

As conceded by the Government, courts have not utilized a uniform approach when delineating the elements of § 844(e). *See, e.g., Spruill*, 118 F.3d at 224–25; *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004); *United States v. Bradbury*, No. 2:14-CR-71 PS, 2015 WL 2449641, at *2 (N.D. Ind. May 22, 2015); *United States v. Schmidlin*, 441 F. App'x 338, 340 (6th Cir. 2011); *United States v. Wiggins*, 146 F. App'x 437, 445 (11th Cir. 2005). Even if the Court were to accept Petitioner's assertion that trial counsel should not have agreed with the Government's statement during the plea hearing that there are only two elements of the statute, Petitioner cannot demonstrate prejudice.

As correctly summarized by the Government, Petitioner admitted the following during the plea hearing:

> Petitioner admitted he traveled by car from Crofton, Maryland to Atlantic City, New Jersey with the intent of extorting $3 million from the Showboat. Prior to this travel he prepared a plan for his extortion scheme and escape, and pursuant to these intentions gathered the following items: a wig and ski mask, a bb gun, hoax bombs, a Molotov cocktail, and scuba equipment. On the date of the crime, he remembered stopping at two different points to think this plan through and to make sure he wanted to carry it out. He specifically remembered stopping and thinking about what he was doing approximately one hour prior to boarding the first shuttle bus. Petitioner also acknowledged that his actions caused Showboat security personnel to evacuate hundreds of Showboat patrons from the Showboat for several hours.
>
> ...Petitioner admitted that he had informed law enforcement that he had a gun, a bomb on his person, and bombs hidden in four locations around the Showboat, and that he threatened to detonate the bomb if members of law enforcement attempted to arrest him or if the Showboat did not produce $3 million in $100 bills. Petitioner further admitted that he placed a hoax bomb in the Showboat men's room, and he informed law enforcement personnel of the location of the bomb in an effort to convince them that the threat was genuine and imminent.

11

> ...Petitioner admitted he displayed packages wrapped in foil on his chest and a small hand-held device, and informed the hostages that the packages and the handheld device were a bomb and a detonator. As noted above, petitioner admitted he told law enforcement he had hidden four bombs around the Showboat including one in the Showboat men's room, that he threatened to detonate a bomb if the Showboat did not produce $3 million or if law enforcement attempted an arrest, and that his actions caused the evacuation of hundreds of patrons from the Showboat for several hours.

(Resp't's Answer 11-12; Plea Hr'g Tr. 25:1-10; 34:12-35:1; 29:8-19; 30:11-17.)

It is clear, based on Petitioner's testimony during the plea hearing, that his conduct more than sufficiently met the requirements to be charged under § 844(e). He affected interstate commerce when he willfully made a threat to kill, injure or intimidate the patrons of Showboat and the hostages on the shuttle bus using the bomb strapped to his body and planted in the casino. The admissions he made, as well as the evidence the Government had, were more than enough to satisfy all the elements of § 844(e). As a result, even if the Court were to find that trial counsel erred when he agreed with the Government's assessment of the elements of § 844(e) at the plea hearing, Petitioner did not suffer any prejudice. His ineffective assistance of counsel claim on this basis is denied.[2]

---

[2] To the extent Petitioner is attempting to argue that he would not have pled guilty if his counsel had properly informed him of the elements of § 844(e), that argument would also fail. In the plea context, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *U.S. v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Such a showing requires "more than a bare allegation" that the defendant would have gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *superseded by statute on other grounds as recognized in Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996). Rather, a defendant must show that a decision to proceed to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Here, Petitioner has merely alleged in a conclusory manner that had counsel informed him of the "proper" elements of § 844(e), Petitioner would not have pled guilty. However, based on the

### 3. Prosecutorial Misconduct (Ground Three)

In his third ground for relief, Petitioner argues that the Government violated his rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) when they failed to produce a videotape which "clearly shows Mr. Kilkeary was not holding any hostages when he made his demands for money. It makes clear that Mr. Kilkeary did not transport hostages from one bus to another bus that was sixty (60) yards away." (Pet'r's Br. 15.) Petitioner contends that if this tape had been shown at the sentencing, it would have "not only countered sworn testimony by government witnesses, but would also show evidence that the defendant could use in defense of additional enhancements that the court applied at sentencing...." (Pet. ¶ 12, Ground Three.)

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Third Circuit has stated: "[t]o establish a due process violation under *Brady*, then, 'a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt

---

overwhelming amount of evidence against Petitioner, it is clear that is not the case. As stated above, the Government had evidence to support every element of the statute, including those elements about which counsel allegedly failed to inform Petitioner. There were many witnesses, physical evidence and Petitioner turned himself in at the scene of the crime after an hours-long standoff with law enforcement. Certainly, a decision to proceed to trial would not have been rational under these circumstances. *See Hill*, 474 U.S. at 59, 106 S.Ct. 366 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial").

13

or punishment.'" *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005), citing *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997) (citations omitted).

In this case, the Government unequivocally states that the videotapes of the Showboat Casino's security cameras during the incident were produced to the Petitioner two months prior to Petitioner's guilty plea. (Resp't's Answer 15; Ex. E, June 8, 2009 Discovery Letter ¶ 1(s).) In his Reply, Petitioner states that he personally did not receive any videotapes from Showboat casino, however he did not address whether his counsel had received the discovery. Given the Government's clear assertion that they provided the videotapes to defense counsel and their attached copy of the discovery letter they sent to defense counsel in June 2009, combined with the fact that Petitioner has failed to suggest, or provide any evidence to suggest, that his attorney did not receive the required material, the Court finds Petitioner's claim on this issue to be without merit.

Even if the Court were to construe these allegations as an ineffective assistance of counsel claim for failing to provide Petitioner with a copy of the tapes, as suggested by Petitioner in his Reply, that claim would also fail because Petitioner cannot meet the prejudice prong of *Strickland*. Petitioner argues that the videotape would allegedly prove that he did not have the *mens rea* necessary to support the kidnapping charge because he released all the hostages before he made a demand for money. However it is clear from the testimony at his plea hearing that he in fact did have the requisite state of mind and all of the elements of the kidnapping statute were met.[3]

---

[3] The kidnapping statutes under which Petitioner was charged, 18 U.S.C.A. § 1201(a), states in relevant part that: "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person…when--(1) the person is willfully transported in interstate or foreign commerce,…or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign

Specifically, Petitioner admitted that he held four individuals hostage on the shuttle; that he displayed packages wrapped in tinfoil on his chest and a small hand-held device and informed the hostages that it was a bomb and detonator; that he released one of the hostages with the instruction that she inform members of law enforcement that he had taken control of the bus; that he threatened to detonate the bomb if Showboat did not produce three million dollars; and that he took the hostages with the intent to extort the money from Showboat. (Resp't's Answer, Ex. B, Plea Tr. 27:18-19; 29:3-7; 29:8-11; 29:23-25; 31:2-4.) Since Petitioner himself acknowledged that he took hostages with the intent to extort money from Showboat and sent one of the hostages to tell law enforcement what was occurring, it is clear that Petitioner did not suffer any prejudice even if counsel failed to show him the security tapes.

### III. CERTIFICATE OF APPEALABILITY

The Court will grant a certificate of appealability as to all grounds of the Petition because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong. There are also issues surrounding an alleged conflict of interest which should be reviewed by the Circuit. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

### IV. CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED, and a certificate of appealability shall issue. An appropriate order follows.

_____
Peter G. Sheridan, U.S.D.J.

---

commerce in committing or in furtherance of the commission of the offense..."